Linda S. MOORE, Petitioner–Appellant,

v.

Pat JARVIS, Sheriff, De Kalb County, Georgia, Respondent–Appellee.

No. 88–8636.

United States Court of Appeals, Eleventh Circuit.

Oct. 18, 1989.

J.M. Raffauf, Office of Public Defender, Decatur, Ga., for petitioner-appellant.

Ralph Taylor Bowden, Jr., Office of Ralph Taylor Bowden, Jr., Decatur, Ga., Gary D. Bergman, Dekalb County Sol's Office, Decatur, Ga., for respondent-appellee.

Before KRAVITCH and COX, Circuit Judges, and MORGAN, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Linda S. Moore, convicted for the third time of driving in Georgia under the influence of alcohol and sentenced to three months in jail and twenty-one months probation, appeals the denial of her petition for habeas corpus. We reverse, in part, and remand the case to the district court.

I. FACTS

Moore was arrested in June 1982 in the City of Oxford, Georgia, and charged with driving under the influence of alcohol ("DUI"), in violation of O.C.G.A. § 40–6–391.[1] She pleaded *nolo contendere*, and, pursuant to subsection 391(c)(1), she was fined $200.00.[2] In March 1985, Moore again was arrested for violating section 40–6–391—this time by the Sheriff's Department of Rockdale County, Georgia. She pleaded guilty, and, pursuant to subsection 391(c)(2), she was ordered to pay a $600.00 fine, to perform eighty hours of community service, and to surrender her driver's license for 120 days.[3] On neither occasion did Moore retain counsel or receive the assistance of appointed counsel.

In April 1985, Moore obtained a new driver's license under an assumed name. In July 1985, she was arrested in DeKalb County, Georgia, for violating section 40–6–391 a third time. She also was charged with leaving the scene of an accident, driving with a suspended driver's license, giving a false name, and disregarding a traffic-control device.

Trial on the July 1985 charges was held before the Circuit Court of DeKalb County.

---

1. Section 40–6–391 of the Official Code of Georgia provides, in part:

 (a) A person shall not drive or be in actual physical control of any moving vehicle while:
 (1) Under the influence of alcohol;
 (2) Under the influence of any drug to a degree which renders him incapable of driving safely;
 (3) Under the combined influence of alcohol and any drug to a degree which renders him incapable of driving safely; or
 (4) There is 0.12 percent or more by weight of alcohol in his blood.
 O.C.G.A. § 40–6–391(a) (Michie 1985).

2. Section 40–6–391(c)(1) provides:

 (c) Every person convicted of violating this Code section shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished as follows:
 (1) First conviction with no conviction of and no plea of nolo contendere accepted to a charge of violating this Code section within the previous five years, as measured from the dates of previous arrests for which convictions were obtained or pleas of nolo contendere were accepted to the date of the current arrest for which a conviction is obtained or a plea of nolo contendere is accepted:
 (A) A fine of not less than $300.00 nor more than $1,000.00, which fine shall not, except as provided in subsection (g) of this Code section, be subject to suspension, stay, or probation; and
 (B) A period of imprisonment of not less than ten days nor more than one year, which period of imprisonment may, at the sole discretion of the judge, be suspended, stayed, or probated;
 O.C.G.A. § 40–6–391(c)(1) (Michie 1985).

3. Section 40–6–391(c)(2) provides:
 (c) Every person convicted of violating this Code section shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished as follows:

 . . . . .

 (2) For the second conviction within a five-year period of time, as measured from the dates of previous arrests for which convictions were obtained or pleas of nolo contendere were accepted to the date of the current arrest for which a conviction is obtained or a plea of nolo contendere is accepted:
 (A) A fine of not less than $600.00 nor more than $1,000.00, which fine shall not, except as provided in subsection (g) of this Code section, be subject to suspension, stay, or probation; and
 (B)(i) A period of imprisonment of not less than 90 days nor more than one year. The judge, at his sole discretion and under such terms and conditions as he shall impose, may suspend, stay, or probate all but 48 hours of any term of imprisonment imposed under this paragraph.
 (ii) The judge, at his sole discretion, may suspend, stay, or probate the minimum 48 hour term of imprisonment not subject to suspension, stay, or probation under division (i) of this subparagraph, provided that a condition of the suspension, stay, or probation of the minimum 48 hour term of imprisonment shall be that the defendant shall perform not less than 80 hours of community service; . . . .
 O.C.G.A. § 40–6–391(c)(2) (Michie 1985).

Prior to trial, Moore requested and received the services of appointed counsel, who filed a motion in limine to bar consideration of Moore's prior DUI convictions at sentencing for the July 1985 DUI offense. The basis of the motion was twofold. First, counsel argued that Moore's prior convictions are constitutionally invalid under *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969),[4] and that *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967),[5] bars consideration of such constitutionally infirm prior convictions in aggravation of sentence for a subsequent offense. Second, counsel argued that, even if Moore's prior convictions were valid under *Boykin,* their consideration at sentencing for the July 1985 offense was barred by *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 *reh'g denied,* 447 U.S. 930, 100 S.Ct. 3030, 65 L.Ed.2d 1125 (1980), which prohibits consideration of constitutional but uncounseled prior convictions as a predicate for an enhanced prison term for a subsequent, counseled offense. In support of the motion, Moore testified that in neither of the prior cases had she been sworn, represented by

counsel, brought before a judge, or informed of her rights as an accused person. The State introduced no evidence to rebut Moore's testimony.

The trial court denied Moore's motion in limine without opinion. Moore subsequently pleaded guilty to the DUI and leaving-the-scene charges, and the court sentenced her, pursuant to section 40–6–391(c)(3), to three months in jail, twenty-one months probation, a $1,050.00 fine, examination for alcohol dependency, and twenty-four month suspension of her driver's license.[6] The Georgia Court of Appeals upheld the sentence, *Moore v. State,* 181 Ga.App. 548, 352 S.E.2d 821 (1987), and both the Supreme Court of Georgia and the Supreme Court of the United States denied certiorari. *See Moore v. State,* No. 44333 (Ga. Feb. 17, 1987), *reh'g denied,* No. 44333 (Mar. 11, 1987); *Moore v. Georgia,* 484 U.S. 904, 108 S.Ct. 247, 98 L.Ed.2d 204 (1987).

Moore's petition for a federal writ of habeas corpus raises three claims: first, that under *Boykin* and *Burgett,* consideration of her prior convictions, which were

---

**4.** *Boykin* held that "[i]t was error, plain on the face of the record, for the trial judge to accept [Boykin's] guilty plea without an affirmative showing that it was intelligent and voluntary." 395 U.S. at 242, 89 S.Ct. at 1711.

**5.** *Burgett* held that constitutionally invalid convictions may not be "used against a person either to support guilt or enhance punishment for another offense...." 389 U.S. at 115, 88 S.Ct. at 262 (citing *Greer v. Beto,* 384 U.S. 269, 86 S.Ct. 1477, 16 L.Ed.2d 526 (1966) (summarily reversing holding of Texas Court of Criminal Appeals that conviction obtained in violation of *Gideon v. Wainwright* could be used in subsequent proceeding to enhance sentence under a recidivist statute)); *see also United States v. Tucker,* 404 U.S. 443, 447–48, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972) (holding, in action under 28 U.S.C. § 2255, that resentencing was compelled where "[t]he record ... ma[de] evident that the sentencing judge gave specific consideration to the [defendant's] previous convictions before imposing sentence.... [and where] the sentence ... might have been different if the sentencing judge had known that at least two of the [defendant's] previous convictions had been unconstitutionally obtained").

**6.** Section 40–6–391(c)(3) provides:
(c) Every person convicted of violating this Code section shall be guilty of a misdemeanor

and, upon conviction thereof, shall be punished as follows:

. . . . .

(3) For the third or subsequent conviction within a five-year period of time, as measured from the dates of previous arrests for which convictions were obtained or pleas of nolo contendere were accepted to the date of the current arrest for which a conviction is obtained or a plea of nolo contendere is accepted:
(A) A fine of $1,000.00, which fine shall not, except as provided in subsection (g) of this Code section, be subject to suspension, stay, or probation; and
(B)(i) A mandatory period of imprisonment of not less than 120 days nor more than one year. The judge, at his sole discretion and under such terms and conditions as he shall impose, may suspend, stay, or probate all but ten days of any term of imprisonment imposed under this paragraph.
(ii) The judge, at his sole discretion, may suspend, stay, or probate the minimum ten-day term of imprisonment not subject to suspension, stay, or probation under division (i) of this subparagraph, provided that a condition of the suspension, stay, or probation of the minimum ten-day term of imprisonment shall be that the defendant shall perform not less than 30 days of community service.
O.C.G.A. § 40–6–391(c)(3) (Michie 1985).

based upon pleas not knowingly and voluntarily made, denied her due process; second, that under *Baldasar*, consideration of her prior convictions, which also were uncounseled, violated the sixth amendment; third, that the State's failure to prove, by *reliable* evidence, that she had been convicted of DUI on two prior occasions denied her due process.

The district court denied habeas, holding that there is "no apparent precedent supporting" Moore's claim regarding consideration of unknowing and involuntary pleas, that *Baldasar* is inapposite in the context of section 40–6–391, and that Moore's claim concerning the standard by which her prior convictions were proven at sentencing was procedurally barred. Finding that the petition presented substantial questions of federal law, however, the court granted Moore's application for a certificate of probable cause to appeal.

## II. DISCUSSION

■ On appeal, Moore renews the three arguments she presented to the district court. At the outset, we note our agreement with the district court's determination that the due-process challenge to the adequacy of the proof of Moore's prior convictions is procedurally barred.[7] Thus, we discuss only the *Boykin/Burgett* and *Baldasar* claims.

## A. The *Boykin/Burgett* Claim

■ One of Moore's prior convictions was based upon a guilty plea, the other upon a plea of *nolo contendere*. Her petition asserts that neither plea was knowingly and voluntarily made within the meaning of *Boykin v. Alabama* and that, therefore, the trial court's consideration of those convictions at sentencing violated the fourteenth amendment's due-process clause as interpreted by the Supreme Court in *Burgett v. Texas*.[8]

■ The district court did not hold an evidentiary hearing on Moore's *Boykin/Burgett* claim. Nor did it cite any state-court determination that Moore's prior pleas were knowingly and voluntarily

---

7. Moore argues that, even if her prior convictions constitutionally could have been considered by the trial judge in sentencing her for her third DUI offense, the State failed to prove those prior convictions by a preponderance of *competent* evidence. Thus, under *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), she contends, the trial court's consideration of those prior convictions at sentencing denied her due process of law.

It is undisputed, however, that Moore failed to make a contemporaneous objection, as required by Georgia law, when the evidence of her prior convictions was submitted at sentencing. Consequently, the Georgia Court of Appeals held the issue to be barred. *Moore v. State, supra,* 352 S.E.2d at 822. The federal district court agreed, holding that Moore had failed to show cause and prejudice for the default, as required by *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). We also agree. In fact, the record shows that far from objecting to the proof of Moore's prior convictions, her trial counsel joined the State in offering the evidence of her prior convictions in an apparent attempt to preserve for appeal the constitutional question under *Baldasar.*

8. Judge Cox in dissent says that he does not understand the petitioner to have alleged that her pleas *in fact* were unknowing and involuntary. Nonetheless, he quotes from the habeas petition the allegation that the "Petitioner was not advised of her rights and *did not knowingly*

*and voluntarily waive any such rights"* (emphasis supplied). The Supreme Court has noted that:

> "A defendant who enters [a guilty] plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson v. Zerbst....* Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts."

*Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, n. 5, 23 L.Ed.2d 274 (1969) (quoting *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) (citations omitted)).

Judge Cox would require more specificity of Moore's petition. He queries, "What should she have known but did not know? In what way was she coerced?" Moore has alleged a fact about her state of mind, i.e. that she did not knowingly waive her sixth amendment rights, and she is entitled to an evidentiary hearing to prove that allegation.

made.[9] Instead, the district court disposed of this claim by stating that "there is no apparent precedent supporting Petitioner's theory that the misdemeanor pleas were presumptively involuntary merely because she was not represented by counsel." *Moore v. Jarvis*, No. 1:87–cv–1473–ODE, mem. op. at 6 (N.D. Ga. Aug. 4, 1988).

The district court's holding indicates to us that the court believed that Moore's petition raised *only* the purely legal argument that uncounseled guilty or *nolo contendere* pleas are presumptively unknowing and involuntary and that, consequently, no determination whether Moore's prior pleas *actually* were knowingly and voluntarily made was necessary to dispose of her *Boykin* claim. We disagree. Although Moore's petition fairly may be read to suggest the existence of such a presumption, her *Boykin/Burgett* claim raises more than this purely legal question.

Moore's petition and supporting papers affirmatively allege that her prior pleas *actually* were unknowingly and involuntarily made, that she raised this issue in the motion in limine and at sentencing, that she testified at the hearing on the motion that she was neither sworn, nor represented by counsel, nor brought before a judge, nor informed of her rights in either of the

prior cases, and that the State failed to introduce any evidence, either at the hearing on the motion in limine or at sentencing, tending to show that Moore's prior pleas were knowingly and voluntarily made. In fact, the petition and supporting papers assert that the evidence before the trial court at the hearing on the motion in limine demonstrated affirmatively that her prior pleas were *not* valid under *Boykin*. The brief filed in this court on her behalf also makes these points. Indeed, from the record before us, it appears that, although the trial court and the Georgia Court of Appeals failed to address the point explicitly, Moore made this contention at trial and at each stage of direct and collateral review.[10]

■ In light of these allegations, we hold the district court's disposition of Moore's *Boykin/Burgett* claim to be insufficient. Although we agree with the district court that uncounseled pleas are not *presumptively* involuntary and unknowing, the district court's rejection of the "presumptively involuntary" prong of Moore's argument left unaddressed Moore's claim that her prior pleas were *actually* unknowingly and involuntarily made and that the trial court's consideration of those pleas at sentencing denied her due process of law.[11] Therefore, we re-

9. Indeed, as the trial court apparently made no record of the findings of fact and conclusions of law underlying its denial of the motion in limine, its implicit determination that Moore's pleas were knowingly and voluntarily made is due no deference under 28 U.S.C. § 2254(d).

10. Admittedly, the record before us is incomplete, as it does not contain the written motion in limine or any record whatever of the trial court's reasoning in denying the motion. The transcript of the hearing on the motion, however, indicates that Moore's counsel affirmatively argued to the trial court at least that Moore's guilty plea to the March 1985 charge was unknowing and involuntary under *Boykin*. The transcript of the sentencing hearing reflects counsel's continuing objection to the consideration of the prior convictions.

Likewise, although the record before us does not include the briefs filed in the Georgia Court of Appeals, that court's opinion denying Moore's appeal reveals that the *Boykin* issue was raised on direct review:

Appellant contends the trial court erred by sentencing her to a term of imprisonment because her two prior misdemeanor convic-

tions for driving under the influence of alcohol were considered by the trial court in imposing sentence, despite the fact that in both prior convictions, she was not represented by counsel, was not advised of her rights *and did not knowingly and voluntarily waive her rights.*

*Moore v. State*, 352 S.E.2d at 821–22 (emphasis added). Additionally, Moore's petition for a writ of certiorari from the Supreme Court of Georgia is in the record, and it, too, reveals that Moore has steadfastly pursued her contention that her prior pleas were *actually* as well as *presumptively* unknowing and involuntary. Finally, the State has responded to this argument on the merits and has not asserted that it is procedurally barred.

11. Although the term of incarceration to which Moore was sentenced could have been given to a first-time offender, *see infra* n. 12, the $1000.00 fine assessed is authorized only for third and subsequent offenses. *Compare* O.C.G.A. §§ 40–6–391(c)(1) *and* 40–6–391(c)(2), *supra* nn. 2 & 3, *with* O.C.G.A. § 40–6–391(c)(3), *supra* n. 6. Thus, it is clear that the trial court considered Moore's two prior convictions in arriving at her sentence.

mand the case for an evidentiary hearing and such further consideration of Moore's *Boykin* claim as the district court deems necessary.[12] On remand, we suggest that the district court give particular consideration to *Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983), which sets forth the proper analysis for evaluating a habeas petitioner's claim that a state trial court improperly considered a prior conviction based upon a plea not knowingly and voluntarily made within the meaning of *Boykin.*[13]

## B. The *Baldasar* Claim

Moore argues that the gist of the Supreme Court's decision in *Baldasar* is that "prior uncounseled misdemeanor conviction[s] [cannot] be used collaterally to impose an increased term of imprisonment upon a subsequent conviction." *Baldasar,* 446 U.S. at 226, 100 S.Ct. at 1587 (Marshall, J., concurring). The State responds that *Baldasar* stands for the much narrower proposition that prior uncounseled convictions may not be used "under an enhanced penalty statute to convert a subsequent misdemeanor into a felony with a prison term." *Baldasar,* 446 U.S. at 223, 100

S.Ct. at 1585 (per curiam). The State notes that at no point does section 40–6–391(c) elevate the offense to a felony, and imprisonment is never mandatory, regardless of the number of prior convictions offered in aggravation at sentencing. Thus, the State concludes, *Baldasar* is inapposite because section 40–6–391(c) is not an "enhanced penalty statute" within the meaning of that decision.

The district court agreed with the State, observing especially that "the prior uncounseled conviction did not automatically require a sentence of incarceration" and that "[t]he sentencing judge's discretion, whether it be the defendant's first, second, third, or subsequent conviction, remains throughout to impose a period of incarceration of up to, but no more than, one year." *Moore v. Jarvis, supra,* mem. op. at 5–6. Although we tend to agree with the district court that O.C.G.A. § 40–6–391 is not the sort of statute under which *Baldasar* forbids consideration of an indigent defendant's prior, uncounseled convictions, we need not reach that issue in order to resolve this case because Moore's factual allegations are insufficient to support a *Baldasar* claim.[14]

**12.** In *Dulin v. Henderson,* 448 F.2d 1238 (5th Cir.1971), the petitioner's conviction was vacated and the case was remanded to the district court to clarify the record as to whether the defendant's waiver of constitutional rights was knowing and voluntary. We follow the same course here.

**13.** Although we remand this case for further consideration, we intimate nothing as to the merits of Moore's *Boykin/Burgett* claim. To allay the fears of those who would read a grant of habeas relief in this case to jeopardize other convictions obtained under O.C.G.A. § 40–6–391(c), however, we note that "[t]he requirement that the prosecution spread on the record the prerequisites of a valid waiver [of the rights identified in *Boykin*] is no constitutional innovation." *Boykin,* 395 U.S. at 242, 89 S.Ct. at 1712. Indeed, since long before Moore's first DUI conviction in 1982, Rules 33.7 and 33.8 of the Uniform Rules of Superior Courts of Georgia have set forth the same requirement.

**14.** There is some authority in this circuit for the State's narrow reading of *Baldasar.* Specifically, in *United States v. Peagler,* 847 F.2d 756, 758–59 (11th Cir.1988), this court held:

[T]he sentencing judge here did not use defendant's convictions to "enhance" defendant's sentence, in the sense that the term was used

in *Baldasar v. Illinois,* 446 U.S. 222, 223–24, 100 S.Ct. 1585, 1585–86, 64 L.Ed.2d 169 (1980) (plurality opinion holding that a constitutionally valid, uncounseled conviction may not be used under an enhanced penalty statute to convert a misdemeanor into a felony with a prison term.). *But see Santillanes v. United States Parole Commission,* 754 F.2d 887, 889 (10th Cir.1985) (Justice Blackmun's concurring opinion, rather [than] plurality opinion, represents holding in *Baldasar* ). *Defendant's sentence was not automatically increased by statute from a non-jail offense to a jail offense because he had a criminal record.* The district court's remarks that it would consider the uncounseled convictions only as they related to defendant's character, and that his reputation warranted a maximum sentence, discounted by the moderate severity of his offense, does not indicate that the district court used the uncounseled convictions to improperly enhance the sentence. The fact that the convictions were uncounseled was noted in the PSI and was reiterated by defendant's counsel. The district court's limited consideration of defendant's uncounseled convictions was not improper.

847 F.2d at 758–59 (emphasis added). This language stands for the dual proposition that an indigent defendant's prior, uncounseled convictions may be considered for *some* purposes at

In *Scott v. Illinois*, the Supreme Court held that "the Sixth and Fourteenth Amendments to the United States Constitution require ... that no *indigent* criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense." 440 U.S. 367, 373–74, 99 S.Ct. 1158, 1162, 59 L.Ed.2d 383 (1979) (emphasis added). In essence, the *Scott* holding set up a trade-off whereby states could choose between providing indigent defendants with appointed counsel and foregoing jail time for convictions obtained without appointed counsel. *Scott* holds that, if the state wants to incarcerate an indigent defendant, the state must provide appointed counsel.

In *Baldasar*, the Court overturned the sentence of an "indigent petitioner [who], after his conviction of petit larceny, was sentenced to an increased term of imprisonment *only* because he had been convicted in a previous prosecution in which he had *not* had the assistance of appointed counsel in his defense." 446 U.S. at 224, 100 S.Ct. at 1586 (Stewart, J., concurring). The common rationale of the three concurring opinions constituting the holding was that the period by which the sentence for the subsequent conviction was increased actually was attributable to the prior, uncounseled conviction. *See, e.g.,* 446 U.S. at 226, 100 S.Ct. at 1587 (Marshall, J., concurring) ("That [Baldasar] has been deprived of his liberty 'as a result of [the first] criminal trial' could not be clearer."). Thus, it appears that the concern raised by the *Baldasar* case was that a state prosecutor, by agreeing not to seek imprisonment of an indigent defendant upon conviction of a first or second prosecution, could deny the indigent defendant the services of appointed counsel while building a record of uncounseled convictions which, if offered in aggravation at a single subsequent pro-

ceeding for which counsel *was* provided, could trigger the imprisonment of the defendant for a much longer period than that to which he would have been subject for the single counseled conviction standing alone. In response to this apparent concern, the Court held that, having opted under *Scott* to deny counsel and forego incarceration with respect to the first proceeding, the state could not "have it both ways" by tacking onto the sentence for the subsequent, counseled conviction jail time which, as a practical matter, was attributable—under the enhancement scheme—to the prior, *un*counseled conviction. *See* 446 U.S. at 224 n.*, 100 S.Ct. at 1586 n.* (Stewart, J., concurring) (noting that the brief submitted by the State of Illinois in the *Scott* case anticipated the *Baldasar* result).

■ The concern motivating *Baldasar*, and the rationale underlying it, however, apply only with respect to defendants who were indigent at the time of their prior conviction(s), for only in their cases will it have been the state's failure to provide appointed counsel during the prior proceeding that precipitated the defendant's incarceration for a term attributable to a conviction for which he received no representation. In short, a non-indigent defendant who eschews representation by retained counsel in one criminal proceeding has no claim under *Baldasar* when, in a subsequent proceeding, the state offers a conviction obtained in the first proceeding as the predicate for an enhanced penalty under a repeat-offender statute. In such a case, the state will not have circumvented its duty under *Scott* in the first proceeding, as none will have been owed, and the state will not have unconstitutionally "had it both ways."

■ Expressed differently, we do not read *Baldasar* to forbid predication of an enhanced term of imprisonment upon *any* conviction obtained in a proceeding in which the defendant did not have counsel. Instead, we read *Baldasar* to forbid only

sentencing and that *Baldasar* holds only that "a constitutionally valid, uncounseled conviction may not be used to convert a misdemeanor into a felony with a prison term."

Even if we adopted the narrower reading suggested by Moore (that *Baldasar* forbids consideration of uncounseled convictions as the predi-

cate for any enhanced term—even where the subsequent offense remains a misdemeanor), however, § 40–6–391 appears to pass muster, because it allows judges to sentence first-time offenders to the same term of incarceration Moore received. Thus, there was no automatic enhancement of Moore's jail term.

the sentencing of a defendant to an increased term of incarceration solely upon consideration of a prior conviction obtained in a proceeding for which, due to the indigence of the defendant or some misconduct of the State, counsel was *unavailable* to the defendant.

 Here, Moore has not alleged—let alone proven—that she was indigent at the respective times of her prior convictions or that the State somehow prevented her from obtaining the services of retained counsel. Consequently, she has failed to allege a *Baldasar* violation.

Accordingly, the judgment of the district court is AFFIRMED IN PART and REVERSED IN PART, and the case is REMANDED to the district court for further proceedings consistent with this opinion.

COX, Circuit Judge, dissenting:

I join in that part of the majority opinion addressing the *Baldasar* claim. I disagree with the majority's disposition of the *Boykin/Burgett* claim.

My disagreement with the majority results from our different views of the record in this case. I understand Moore to be alleging simply that her pleas were unknowing and involuntary *because* they were entered without the benefit of a *Boykin* hearing. I do not understand her to be claiming that they were *in fact* unknowing or *in fact* involuntary. Even if I did think she claimed that her pleas were actually unknowing and involuntary, I would require that she tell the court specifically how they were unknowing or involuntary *before* she is entitled to an evidentiary hearing.

The fact that no *Boykin* hearing was held is undisputed. It is obvious, therefore, that the majority does not hold that the absence of a *Boykin* hearing in and of itself entitles Moore to relief, as otherwise a remand for an evidentiary hearing would be unnecessary. It is clear in this circuit that the absence of a *Boykin* hearing does not, without more, subject the convictions in question to collateral attack. *See Dulin v. Henderson,* 448 F.2d 1238 (5th Cir.1971); *Dennis v. Henderson,* 435 F.2d 1288 (5th Cir.1970).

The habeas petition filed in the district court contained the following allegations (and only the following allegations) as the basis of her attack on the validity of her sentence:

Petitioner's restraint is contrary to the United States Constitution in the following particulars:

A) Sentencing the Petitioner term of imprisonment based on two prior uncounseled misdemeanor convictions which were also constitutionally invalid because Petitioner was not advised of her rights and did not knowingly and voluntarily waive any such rights violated the Sixth and Fourteenth Amendments.

B) Using an uncounseled misdemeanor sentence to invoke a minimum statutory jail sentence or to enhance a sentence of confinement violates the Sixth and Fourteenth Amendments.

C) Sentencing the Petitioner to a term of imprisonment based on two prior convictions, the validity or reliability of which, were not proven under any permissible standard of evidence violated the due process and equal protection guarantees of the Sixth and Fourteenth Amendments.

(R1, Tab 1, pages 2 & 3). The Magistrate recommended that the petition be denied (R1, Tab 12). Moore then objected to the Magistrate's Recommendation (R1, Tab 13), arguing that the Magistrate did not address her claim that the pleas were not knowingly and voluntarily entered. Her objection stated: "That is, not only were the pleas uncounseled, the pleas were not knowing and voluntary in that they were not taken in open court or even before a judge; they were taken without advisement or waiver of any constitutional right; there was no legal or factual foundation laid."

No other court presented with Moore's claims has ever understood them to include a claim that her pleas were *in fact* unknowing and involuntary. The majority opinion states that "Moore's petition and supporting papers affirmatively allege that her prior pleas *actually* were unknowingly and involuntarily made...." The petition

clearly included no such allegation, and I fail to find any such allegation in the "supporting papers" filed with the petition. Perhaps this explains why such a claim escaped the attention of the state trial court, the state appellate court, and the district court below.[1]

Even if we were to construe Moore's claims to include a claim that her pleas were unknowing or involuntary, before requiring an evidentiary hearing, we should require her to tell the court specifically how they were unknowing or involuntary. What should she have known but did not know? In what way was she coerced? Because conclusory allegations not supported by specifics do not entitle Moore to an evidentiary hearing, *see Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977), she should at least be required to amend her petition to allege facts which, if proven, would entitle her to relief.

This court provides Moore an evidentiary hearing she does not seek—either in the district court or in this court—on a claim she does not assert—either in the state courts or in the district court. I therefore dissent.

---

1. I do not understand Moore's briefs on this appeal to assert the claim which the majority posits. Moore's reply brief in this court states that "the pleas were involuntary and not knowing *because* there is no record of the pleas and one cannot be reconstructed since there was in fact no procedural or substantive due process at all in the convicting courts." Appellant's Reply Brief at 5 (emphasis added).