[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 20, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-12689
Non-Argument Calendar
_____

D. C. Docket No. 07-00026-CR-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARTIEL SHARMEL LEEKS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(November 20, 2008)

Before TJOFLAT, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

Appellant Martiel Sharmel Leeks was indicted on three counts of acquiring

firearms by knowingly making false and fictitious written statements to federally licensed firearms dealers, in violation of 18 U.S.C. § 922(a)(6). These charges stemmed from three transactions in which Leeks purchased eight firearms from federal firearms licensees. In each transaction, Leeks completed a Bureau of Alcohol, Tobacco, and Firearms Form 4473, in which he indicated that he was the actual buyer of the firearms listed on the form. Subsequent events and investigation revealed that this information was false and that the firearms were later illegally transferred to other parties. Three of the guns were ultimately recovered by law enforcement: the first after a suicide in Virginia; the second during an arrest for delivery of crack cocaine in New York; and the third at the home of a convicted felon in New York.

On January 24, 2008, Leeks pleaded guilty to one count of the indictment. The sentencing hearing was held on May 6, 2008. At the hearing, the district court reviewed the Presentence Investigation Report ("PSI").[1] Neither party objected to the portion of the PSI that identified an offense level of 17[2] and criminal history

---

[1] The facts in the PSI are deemed admitted because Leeks pleaded guilty and made no factual objections to the PSI. United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005).

[2] The base offense level was 12, U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2K2.1(a)(7) (2007), plus 4 levels for eight firearms involved, id. at § 2K2.1(b)(1)(B), plus 4 levels for trafficking in firearms, id. at § 2K2.1(b)(5), minus 3 levels for acceptance of responsibility, id. at § 3E1.1.

category of III,[3] which resulted in a guideline range of 30 to 37 months imprisonment. Leeks did object, however, to the portion of the PSI in which the probation officer recommended an upward departure to 51 months imprisonment, pursuant to U.S.S.G. § 4A1.3, because Leeks' criminal history category "substantially under-represented the seriousness of the defendant's criminal history, and particularly the likelihood that he will commit future crimes."

Defense counsel acknowledged that Leeks had been convicted of ten other crimes, but only three of them were assigned criminal history points. She argued that the convictions that did not receive points should not be considered by the district court for two reasons: (1) consideration of these convictions would violate Alabama v. Shelton, 535 U.S. 654 (2002), as they were obtained without the aid of counsel; and (2) these crimes involved minor misdemeanors and traffic offenses. Leeks, his mother, and a woman with whom he has a daughter thereafter testified as to Leeks' rehabilitation and good relationship with his family.

The government agreed that the district court should not assign criminal history points for convictions that were unconstitutionally obtained, but argued that it could look at Leeks' prior conduct to show a high risk of recidivism. The

---

[3] Leeks received a total of 5 criminal history points for two misdemeanor convictions for possession of less than one ounce of marijuana and one felony conviction for possession of cocaine and MDMA (aka ecstacy).

3

government argued that the convictions that did not result in criminal history points painted the true picture of Leeks: one of a repeat offender. The probation officer told the district court that the records for these convictions could not be obtained, and thus it could not be verified whether Leeks did or did not have counsel during those proceedings. She stated that by virtue of the inability to include these convictions in determining Leeks' criminal history, "he was spared a total of ten criminal history points." She also took issue with defense counsel's characterization of Leeks' crimes as minor, noting that one of these crimes involved, inter alia, fleeing from the police while an unrestrained toddler was in the car. She noted that the crimes for which points were assigned, including felony possession of cocaine and MDMA, did not tell the full story of Leeks' criminal activity because other charges were dropped after a plea agreement was procured, including charges related to Leeks' possession of marijuana and a gun at the time of the arrest.

The district court ultimately imposed a sentence of 48 months imprisonment, 3 years supervised release, a $2,400 fine, and a $100 special assessment. In doing so, the court acknowledged the 30 to 37 month guideline sentence range and that it did not consider the allegedly uncounseled convictions in determining Leeks' criminal history, but stated that these convictions did nonetheless "show[]

continual misbehavior and criminal conduct." The court emphasized that Leeks'

arrest record indicated a pattern of criminal conduct, beginning at age 17 and

continuing to his then present age of 27. The district court noted that Leeks'

record indicated that he "does not look as if [he has] been very interested in living

within the confines of the law." The district court listened to Leeks' witnesses who

testified that despite his past indiscretions, Leeks had matured. The court

disagreed, however, noting that Leeks' most recent crime was the possession of

cocaine and MDMA, evidencing that he had recently "graduated from

misdemeanors into felonies."

The district court also discussed the distinct circumstances of this case. The

guns that were recovered had fallen into the hands of criminals and were used for

the purposes of criminal activity. The court noted that five guns were still

unaccounted for and "people who are otherwise law abiding will in all likelihood

suffer." Lastly, the court pointed out that there was very little evidence in Leeks'

record of legitimately earned income, positing that Leeks might support himself

through ill-gotten gains.

Leeks now appeals his sentence, arguing that its imposition was procedurally

unreasonable.[4]

---

[4] Leeks' brief only raises issues of procedural reasonableness, not substantive
reasonableness. Therefore, our review is limited to this issue. See Dalrymple v. United States,

# I.

At the outset, this court must determine whether the district court's deviation from the Guidelines sentencing range represents an upward departure, under U.S.S.G. § 4A1.3(a), or a variance, under 18 U.S.C. § 3553(a). Although either section can be used by a district court in concluding whether to deviate from the Guidelines range, they require the consideration of different factors. See United States v. Irizarry, 458 F.3d 1208, 1211 (11th Cir. 2006).

Based on a review of the record and applicable factors, we conclude that the district court imposed a variance under 18 U.S.C. § 3553(a). First, in the "Statement of Reasons," which was issued by the court on the date of sentencing, the court checked boxes under a section entitled "Reason(s) for Sentence Outside the Advisory Guideline System," indicating that it relied upon three § 3553(a) factors in deviating from the Guidelines range. Notably, it did not check any boxes under another section entitled "Reason(s) for Departure," which included "4A1.3 Criminal History Inadequacy." Second, although the district court did not expressly reference § 3553(a) at sentencing, a review of the record indicates that its analysis focused upon § 3553(a) factors, such as the nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the

460 F.3d 1318, 1324 n.6 (11th Cir. 2006) (issues not raised in an appellant's initial brief are abandoned).

6

offense. The district court's application of these factors is discussed below.

## II.

We review the procedural reasonableness of a district court's sentence for abuse of discretion. Gall v. United States, __ U.S. __, 128 S. Ct. 586, 597 (2007). The party challenging the sentence has the burden of establishing unreasonableness. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). Although the Sentencing Guidelines are no longer considered mandatory, they must be consulted and considered by the district court. United States v. Booker, 543 U.S. 220, 264 (2005). The Supreme Court has explained that our review of the procedural reasonableness of a district court's sentencing decision should focus upon considerations "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range." Id.

Both parties agree that Guidelines range was properly calculated and was considered by the district court. Leeks contends, however, that the district court subsequently erred in granting a variance from the Guidelines range. Leeks argues that the court did not consider all of the § 3553(a) factors, its analysis included an

7

overemphasized and inaccurate categorization of Leeks' criminal history, and it impermissibly considered the circumstances surrounding the instant offense for which Leeks was being sentenced.

Section 3553(a) includes a list of factors which a court should consider before granting a variance:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need "to protect the public from further crimes of the defendant; " (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the sentencing guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.

Irizarry, 458 F.3d at 1211 n.2. The weight given to particular sentencing factors is committed to the sound discretion of the district court. United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007).

In this case, the district court's "Statement of Reasons" indicates, and the record confirms, that it chiefly relied on three § 3553(a) factors in choosing to impose a sentence greater than that of the Guidelines range: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to

promote respect for the law, and to provide just punishment for the offense; and (3) the need to protect the public from further crimes of the defendant. We have held that when considering a variance, a district court need not "state on the record that it has explicitly considered each of the § 3553(a) factors or [] discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005).

Although uncounseled convictions may not be used to compute a defendant's criminal history category, United States v. Gray, 367 F.3d 1263, 1273 (11th Cir. 2004), they may be used to determine the defendant's character. United States v. Peagler, 847 F.2d 756, 758 (11th Cir. 1988). Leeks has ten convictions, three of which are for drugs offenses involving possession of three types of drugs. Leeks has enabled guns to fall into the hands of felons and drug dealers and has almost no legitimate income. The district court therefore did not abuse its discretion in concluding that Leeks' "criminal activity has been consistent for many years," "his arrest[s] have increased in frequency and severity over time," and he "has not demonstrated at this point that he is anything but a drug dealer."

The district court's consideration of the circumstances surrounding the crime for which it sentenced him were also proper. Leeks argues that the Guidelines range already reflected the circumstances of this case, and that a variance based on consideration of these facts essentially results in double-counting. This position,

9

however, is undermined by both the purpose of the Sentencing Guidelines and the text of § 3553. The Supreme Court's holding that the Sentencing Guidelines are no longer mandatory, as articulated in Booker, reflects the understanding that although the Guidelines estimate a reasonable sentence, they cannot account for the individual particularities of each case. See Booker, 543 U.S. at 264-65 (treating the Guidelines as advisory helps "to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary").

Moreover, the text of § 3553 specifically mandates that in reaching a sentence that is "sufficient, but not greater than necessary," the court should consider factors such as the circumstances and seriousness of the offense. 18 U.S.C. § 3553(a). In concluding that a variance was warranted, the district court did not abuse its discretion in considering that Leeks' crime involved three separate unlawful purchases. It noted that the guns procured in these transactions have fallen into the hands of felons, have been used during the commission of crimes, and have already resulted in one death. The district court also noted that the public may later be harmed by Leeks' crime because five other guns are yet to be recovered and may be used to harm others.

For the aforementioned reasons, we find that the district court did not abuse its discretion in imposing a variant sentence.

**AFFIRMED.**

10